IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| ROBERT E. OGLE, RECEIVER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:21-cv-00129-O-BP |
| | § | |
| LARRY C. CABELKA, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are the Motion for Summary Judgment and Brief in Support (ECF Nos. 42, 43) filed by Plaintiff Robert Ogle ("Ogle"); the Amended Response with Brief in Support filed by Defendants Jared and Bonnie Cabelka ("Jared and Bonnie") (ECF Nos. 50, 51, 52, 53, 54); and Ogle's Reply and Supplement Appendix. (ECF Nos. 48, 49). Having considered the Motion, applicable legal authorities, and the summary judgment evidence, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** the Motion for Summary Judgment. ECF No. 42.

**I.     BACKGROUND**

This case arises out of the enforcement of Ogle's Receivership in a litigation saga connected to the tax liability of Larry Cecil Cabelka ("Larry"). *See* Cause Nos. 7:16-cv-00126-O-BP; 7:18-cv-00174-O-BP. Discovery in both of those actions led Ogle to conclude that Larry had transferred certain real property interests to various defendants, including Jared and Bonnie. *See* ECF Nos. 1, 42. Ogle filed suit to recover any such interests, which is the Receiver's right under the Receivership Orders in the above referenced actions. *See* ECF Nos. 324 in Cause No. 7:16-cv-

00126-O-BP; 76 in Cause No. 7:18-cv-00174-O-BP. The parties are otherwise familiar with the case's factual and procedural background.

Ogle filed the instant Motion against Jared and Bonnie (ECF No. 42, 43) arguing that they have no interest in the Hoodenpyle property at issue because although Jared was listed as an owner on the deed, he was a nominee for the property. *Id.* Even if Jared's name was properly listed on the deed, Ogle argues that the conveyance to him was a fraudulent transfer. *Id.* Jared and Bonnie contend that they own fifty percent of the Hoodenpyle property and therefore disagree that the Court can order the sale of the property to pay Larry's judgment. ECF No. 45. The Motion is ripe for review.

## II.   LEGAL STANDARDS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Slaughter v. S. Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment would be improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering

depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Merely colorable evidence or evidence not significantly probative will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249–50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Id.* at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

The Court must view summary judgment evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 242–43. The movant's motion for summary judgment will be granted only if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56; *Duckett*, 950 F.2d at 276.

### III.   ANALYSIS

Jared and Bonnie did not file any affidavit, declaration, sworn testimony, or other evidence purporting to prove that they have any interest in the Hoodenpyle property. They only provided unsupported statements claiming an interest. *See* ECF No. 45. Jared and Bonnie cannot defeat Ogle's Motion without providing any evidence to the Court. *See David v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1086 (5th Cir. 1994) (per curiam); *DirecTV, Inc., v. Budden,* 420 F.3d 521, 531 (5th Cir. 2005).

### A.   The Hoodenpyle property was purchased in the names of Jared, Larry, and Wayne Davidson, and the purchase money came from Larry's bank account.

The parties agree that in 2003, Larry purchased the Hoodenpyle property, in the names of Jared, Wayne Davidson, and him. ECF Nos. 43 at 12 and 45 at 5-6. At the time of the purchase, Larry was not filing federal income tax returns and owed millions of dollars in unpaid taxes to the Internal Revenue Service ("IRS"). ECF No. 43 at 12. The land was bought at a public foreclosure sale in the amount of $117,286. ECF No. 46-2 at 3-4. Ogle argues that Larry orchestrated the purchase, that he paid back the loan to Wayne Davidson, and that the money came from Larry's bank account and the Burkburnett Account, both of which accounts Larry funded through his businesses alone. ECF No. 48 at 9-11. Ogle further asserts that Jared was a nominee for Larry in the transaction. *Id.* Jared and Bonnie contend that both Jared and Larry purchased the land together and that they were in the businesses that funded the Burkburnett accounts together as partners. ECF No. 45 at 7-8. Jared states that his money was deposited into the same account as Larry's. *Id.*

A nominee is a person who holds legal title to a property for the benefit of another. *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000) ("A nominee theory involves the determination of the true beneficial ownership of property.") (citation omitted). The focus in determining nominee status in a suit such as this is the relationship between the taxpayer and the

4

property and whether the taxpayer engaged in "a legal fiction" by placing title to property in the hands of a third party, while retaining some or all of the benefits of actual ownership. *Id.* In deciding whether a nominee lien should be enforced, the Court considers whether: (1) the nominee paid inadequate or no consideration; (2) the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property; (3) there is a close relationship between the nominee and the transferor; (4) the parties to the transaction failed to record the conveyance; (5) the transferor retained possession; and (6) the transferor continues to enjoy the benefits of the transferred property. *Oxford Capital Corp. v. United States,* 211 F.3d 280, 284 n.1 (5th Cir. 2000). Not all of the factors are of equal weight and no one factor is outcome determinative. *Id.* However, taxpayer control is one of the more significant factors. *Id.*

Jared and Bonnie offered no summary judgment evidence to counter Ogle's claims. There is no evidence to support the proposition that Jared or Bonnie paid any consideration for the property.

In support of his claim, Ogle provided bank account records (ECF No. 43-1 at 98-100) and sworn deposition testimony and documents in which Jared acknowledged that the businesses were Larry's alone (ECF No. 43-1 at 117-142), that he worked for Larry's businesses (not as partners) (ECF No. 48-1 at 4-5 and 22-25), and that Larry was the sole owner of the bank accounts. (ECF No. 49-1 at 4-5). Jared and Larry's deposition testimony shows that Jared's interest in the Hoodenpyle property was on paper only and subject to Larry's direction and control. ECF No. 48-1 at 9-10 and 43-1 at 119. Additionally, Ogle relies on an affidavit from IRS officer Fred Rice, who testified that using Jared as a nominee provided Larry with the benefit of not paying taxes that he legally owed the federal government. ECF No. 43-1 at 121 n.1. Ogle argues from Rice's

affidavit that Larry was using Jared to conceal the real estate when Jared was a minor. ECF No. 43-1 at 119-21. Testimony provided supports Ogle's claim that only Larry paid for the property. ECF No. 43-1 at 98-100; 117-142; 212. Further, Larry received the income from the property and controlled the property. *Id.*

The judgment in one of the previous cases against Larry also provides evidence of his income that could support the purchase of the property compared to Jared's tax return for the same time period that showed that he could not have purchased it. ECF No. 43-1 at 137-142; *United States v. Cabelka,* No. 7:16-cv-00126-O-BP, 2017 6883893 (N.D. Tex. Dec. 21, 2017) *rec. adopted* 2018 WL 341739 (N.D. Tex. Jan. 9, 2018). Because Ogle provided sufficient summary judgment evidence, and Jared and Bonnie offered none, the undersigned finds that Larry acquired the property, was the true owner of the Hoodenpyle property, and Jared and Wayne Davidson were his nominees.

### B. Jared and Bonnie have provided no evidence that they have a legal interest in the property.

#### 1. Jared's 2003 federal income (Form 1040) tax return given to the IRS in 2015 shows insufficient funds to purchase the Hoodenpyle property.

Ogle provided a copy of Jared's 2003 federal income tax return mailed to the IRS and received by the IRS collection division eleven years later in 2015. ECF No. 43-1 at 137-42. This return shows that Jared had insufficient income during 2003 to purchase the Hoodenpyle property, directly contradicting Jared's claim to the contrary. *Id.* at 138-39.

In response, Jared argues that his gross income when added together showed that he had more than enough money to purchase the property in 2003. ECF No. 46-8 at 2-6. The data that he provided from his 2003 returns does not confirm that there was enough net income to support his contention. *Id.*

### 2. Jared did not disclose any property interest in his 2015 federal financial statement that the IRS relied upon.

Ogle next argues that Jared did not disclose any interest in the Hoodenpyle property when meeting with the IRS while attempting to collect from Jared the tax assessment that the IRS previously made against him. ECF No. 43 at 17-18. IRS Agent Rice declared in his affidavit that Jared did not disclose the Hoodenpyle property as his asset. ECF No. 43-1 at 118-20.

Jared alleges that he did not include information about the property on the forms he provided to the IRS because at that time he could not confirm, nor did he have proof, that he had this interest in the property. ECF No. 45 at 13-14. He states that because Larry had previously attempted to defraud him with a false deed, he did not want to make any false claims here. *Id.* Jared provides no evidence or sworn affidavit to support this allegation.

### 3. Jared did not produce any documentary evidence of his interest in the property during his post-judgment deposition.

On October 14, 2021 Jared gave a post-judgment deposition in the Government's previous cases against Larry, and he was subpoenaed to produce all documents relating to real estate that he currently owned or in which he claimed an interest. ECF No. 43-1 at 102-104, 107-112. Jared produced no documents relating to the Hoodenpyle property during this deposition.

Jared argues that he and Larry were to each own half of the Hoodenpyle property. ECF No. 45 at 16. However the only evidence in the record is what Bonnie provided, which supports the proposition that Larry paid the purchase price for the property out of his own account and the "Golden Triangle business account" that Larry owned. ECF No. 43 at 18-19, 43-1 at 99-100; 144-46. Jared also acknowledged that Larry owned these accounts and the businesses, and that he was Larry's employee. *Id*.

### 4. Jared and Bonnie produced no evidence of their interest in the property in their responses to the Receiver's discovery requests.

Ogle served Jared with requests for production, request for admissions, and at least one set of interrogatories. Jared and Bonnie produced no documents to support their claim of a fifty percent interest in the property. ECF No. 43 at 19-20.; 43-1 at 144-68.

Because Jared has failed to present any evidence to rebut the presumption that the tax assessments are valid and correct, he has not carried his burden under the applicable summary judgment standard. Accordingly, there is no genuine dispute of material fact regarding the tax assessments, and the United States is entitled to judgment as a matter of law.

### C. Even if Jared and Bonnie had an interest in the property, it should be set aside as a fraudulent transfer.

Ogle argues in the alternative that even if Jared actually acquired an interest in the Hoodenpyle property and was not holding it as a nominee, then the Court should set that interest aside as a fraudulent transfer. ECF No. 43 at 30. He alleges that the property was fraudulently transferred to him while Larry was delinquent in paying his taxes for 1997-2003 and 2005-2009 tax years. *Id.* at 1. Ogle argues that pursuant to the Uniform Fraudulent Transfer Act (the "UFTA"), because Larry made the "transfer with actual intent to hinder, delay, or defraud creditors" of his, including the IRS; the transfer was to insiders (his son and business associate); he retained possession and control of the property after an interest in it was transferred, the transfer was allegedly concealed intentionally with no recorded deed, and because he paid no income taxes for those years, the transfer of the property should be voided. Okla. Stat. Ann. tit. 24, §§116 and 117 (West 2023); ECF No. 43 at 31; 46-3 at 5-7 and 13-18. Ogle further contends that, because of Larry's "fraudulent" transfer, he is the true and beneficial owner of the Property, which permits Ogle to now resell on the Property. *Id.* at 26-28.

8

The court agrees that there is no issue of material fact on the issue of a fraudulent transfer of the Hoodenpyle property. According to Oklahoma law:

> A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> 1. with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> 2. without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>    a. was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or
>    b. intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
>
> B. In determining actual intent pursuant to the provisions of paragraph 1 of subsection A of this section, consideration may be given, among other factors, to whether:
>
> 1. the transfer or obligation was to an insider;
>
> 2. the debtor retained possession or control of the property transferred after the transfer;
>
> 3. the transfer or obligation was disclosed or concealed;
>
> 4. before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> 5. the transfer was of substantially all the debtor's assets;
>
> 6. the debtor absconded;
>
> 7. the debtor removed or concealed assets;
>
> 8. the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

> 9. the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
> 10. the transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
> 11. the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Okla. Stat. Ann. tit. 24, § 116.

Many of these factors are similar to the ones evaluated to determine nominee status for a federal tax lien, and Ogle has provided sufficient evidence to carry his summary judgment burden. As stated above, neither Jared nor Wayne Davidson gave reasonably equivalent value in exchange for the Hoodenpyle property, and Larry maintained control of it. ECF No. 43-1 at 99-100; 145-46; 194-96; 212. Wayne Davidson loaned Larry the money for the purchase, and Larry paid him back. *Id.* at 212. At the time of the transfer, Larry was insolvent, and the IRS was his largest creditor, owed approximately $25 million. ECF No. 43-1 at 117-20. *Id.*

Jared and Bonnie have produced no evidence to show that they paid any money for the Hoodenpyle property at any time. Jared and Bonnie only produced documentation showing that the purchase price for the property came from Larry. ECF No. 43-1 at 99-100; 145-46. Because the transfer meets the requirements for a fraudulent transfer, Judge O'Connor should find that the transfer is void and that Ogle has the right to sell the property.

## IV.   CONCLUSION

Jared and Bonnie Cabelka have provided no summary judgment evidence to raise a fact issue for trial as to any legal interest in the Hoodenpyle property. Receiver Robert Ogle has shown that Jared was a nominee for his father, Larry, in the transaction, and that even if he were not, the original transfer to Jared, Larry, and Wayne Davidson was fraudulent and should be set aside.

Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the Motion (ECF No. 42).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on July 17, 2023.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE